## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAUL NAZARIO,** | : | |
| | : | |
| **Plaintiff** | : | **ACTION NO. 3:22-CV-1366** |
| | : | |
| **v.** | : | **(JUDGE MANNION)** |
| | : | |
| **MERRICK GARLAND and SCOTT FINLEY,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Defendant Merrick Garland moves to dismiss Plaintiff Raul Nazario's complaint. Defendant Garland is the Attorney General of the United States, and Defendant Scott Finley was the Warden and Chief Executive Officer of the Federal Correctional Institution at Schuylkill County, Pennsylvania, where Plaintiff was employed. Plaintiff alleges violations of the Rehabilitation Act, Title VII of the Civil Rights Act of 1964, and the United States Constitution.

## I.    BACKGROUND

### A. Factual Background[1]

Plaintiff was employed as a Recreational Specialist at FCI Schuylkill. (Doc. 1 ¶5). During his employment, his coworkers and supervisors commented on his accent and Puerto Rican heritage. (Id. ¶¶101–02). His coworkers also talked about the fact that Plaintiff drove a Mercedes, and they criticized his interactions with Spanish-speaking inmates. (Id. ¶¶104–06).

In late January 2020, Plaintiff was diagnosed with localized osteoarthritis in his right knee. (Id. ¶41). His treating physician initially ordered temporary work restrictions until February 22, 2020. (Id. ¶¶45–46). After Plaintiff was told by his supervisor that he would not be allowed to return to work with restrictions, he obtained revised medical clearance to return immediately without restrictions. (Id. ¶¶59–65). Another Recreation Specialist, Adam Ducayne, was permitted to return to work in a "light duty" position for several weeks after breaking his foot. (Id. ¶¶52–54).

Upon returning to work, Plaintiff was ordered to submit to a physical search of his person and belongings. (Id. at ¶¶70–72). He was then

---

[1] Because this is a motion to dismiss, the court must "accept all factual allegations as true." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016). The factual background is therefore drawn from the Complaint. (Doc. 1).

reassigned to a position in the administration building. (Id. ¶76). Defendant Finley told Plaintiff that he was being reassigned because he was under investigation for misconduct. (Id. ¶80).

On March 18, 2020, Plaintiff participated in an EEO informal counseling telephone interview with his attorney and an EEO counselor. (Id. ¶107). Later that day, he was asked to speak privately with his supervisor, who said that "Management" had instructed him to warn Plaintiff about "watching too much TV in the staff room." (Id. ¶110–12).

In late November 2020, Defendant Finley received a copy of the report of investigation for Plaintiff's EEO complaint against him. (Id. ¶119). In early December, Finley came to Plaintiff's office and "verbally berated him" for not wearing a mask. (Id. ¶120). Plaintiff submitted a memorandum to the union president about the incident, and later that same day received a negative performance entry ordered by Defendant Finley. (Id. ¶121–22). Plaintiff made a complaint to the prison's human resources manager, and Defendant Finley thereafter "went out of his way to come to Plaintiff's office to check on Plaintiff every single day." (Id. ¶124). Plaintiff submitted a complaint against Finley to the Bureau of Prisons' Northeast Regional Office in January 2021, alleging harassment and retaliation. (Id. ¶125). Finley continued to come to

Plaintiff's office every day. (Id. ¶128). Defendant Finley retired from BOP service in September 2021. (Id. ¶131).

In February 2022, Plaintiff was interviewed by an agent of the United States Office of Inspector General at the request of the new warden. (Id. ¶¶141, 143). The agent informed Plaintiff that he was subject to investigation for suspected involvement in narcotics smuggling efforts at the prison. (Id. ¶144). He also told Plaintiff that the investigation had been sent back to Defendant Finley multiple times but that Finley had referred the investigation back to the OIG. (Id. ¶146). Plaintiff was notified in May 2022 that the investigation was closed. (Id. ¶153).

### B. Procedural History

Plaintiff initially contacted an EEO Counselor on February 28, 2020, (Id. ¶17), and on March 18 participated in an EEO interview and requested a 60-day extension of the EEO counseling period. (Id. ¶¶18–19). He received a Notice of Right to File a Discrimination Complaint on May 28, 2020. (Id. ¶20). He submitted a formal complaint of discrimination on June 12, 2020. (Id. ¶22). On August 4, 2021, he requested a final agency decision, which decision remained unissued as of August 1, 2022. (Id. ¶¶25, 28).

Plaintiff filed a complaint (the "Complaint") in this court on September 2, 2022. (Doc. 1). The Complaint brings the following claims against

Defendant Garland: (I) Rehabilitation Act – Failure to Provide Reasonable Accommodation; (II) Rehabilitation Act – Disparate Treatment; (III) Rehabilitation Act – Retaliation; (IV) Rehabilitation Act – Interference; (V) Title VII of the Civil Rights Act – Disparate Treatment; (VI) Title VII – Retaliation; and (VII) Title VII / Rehabilitation Act – Retaliatory Hostile Work Environment. (Doc. 1 at 25–33). It brings the following claims against Defendant Finley: (VIII) Fourth Amendment – Seizure / Investigatory Detention; and (IX) Fourth Amendment – Warrantless Search. (Id. at 33–36). Plaintiff seeks damages and demands a jury trial. (Id. at 36).

## II.   LEGAL STANDARD

In response to a complaint, a party may move for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must make more than "conclusory or 'bare-bones' allegations," and "'threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, the complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

In considering the complaint, the court must apply a "two-part analysis." *Id.* "First," the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11. "Second," the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim to relief." *Id.* at 211.

## III.   DISCUSSION

### A. Defendants

Defendants are Merrick Garland and Scott Finley. Defendant Finley is sued in his personal capacity. (Doc. 1 ¶9). Because the Complaint does not allege any actions taken by Defendant Garland personally, the court assumes that he is sued in his official capacity,[2] as the Attorney General of

---

[2] An official-capacity suit "generally represent[s] only another way of pleading an action against the entity of which the officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Such a suit "is … to be treated as a suit against the entity." Id. at 166. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Here, Plaintiff sues Defendant Garland under §501 of the Rehabilitation Act and Title VII of the Civil Rights Act of 1964. "Congress has waived the Federal Government's sovereign immunity from compensatory damages claims for violations of §501 of the Rehabilitation Act," *Lane v. Pena*, 518 U.S. 187, 193 (1996) (citing 29 U.S.C. §794a(a)(1)), as well as for claims under Title VII. *Libr. of Cong. v. Shaw*, 478 U.S. 310, 323 (1986).

the United States and head of the United States Department of Justice, of which the Bureau of Prisons and FCI Schuylkill are part.

### B. Count I – Failure to Provide Reasonable Accommodation

"To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must initially show, '(1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job.'" *Wishkin v. Potter*, 476 F.3d 180, 184–85 (3d Cir. 2007).

Defendant argues that Count I should be dismissed because Plaintiff "fails to allege what specific accommodations he was seeking," and thus has not plead that he was qualified to perform the essential functions of his position with or without reasonable accommodations. (Doc. 16 at 14). But Plaintiff alleges that his physician initially cleared him to work with "physical restrictions that included 'no running, no restraints, squatting, kneeling.'" (Doc. 1 ¶56). Those limitations were later revised, Plaintiff alleges, to just "no running." (Id. ¶60). Plaintiff has alleged what accommodations he was seeking. He has plead that he is qualified to perform the essential functions

of his position with or without reasonable accommodations. (Id. ¶36). Defendant's motion to dismiss Count I will be denied.

### C. Counts II–IV

Defendant argues that Counts II through IV should be dismissed for the same reason as Count I: because Defendant has not alleged that he was qualified to perform the essential functions of his position with or without reasonable accommodations. (Doc. 16 at 14). As discussed *supra* Section III.B, the court disagrees. It will therefore not dismiss on this basis.

The court concludes that Plaintiff has not failed to state a claim for relief in Counts II–IV, so Defendant's motion to dismiss these counts will be denied.

### 1. Count II - Rehabilitation Act Disparate Treatment

Plaintiff has alleged that he was disabled by his knee injury, that he was qualified to perform the essential functions of his position with or without reasonable accommodations, and that he suffered an adverse employment action by Management's refusal to allow him to return to work with temporary physical restrictions. He has also alleged that a similarly situated individual, Specialist Ducayne, was treated differently. He has thus not failed to state a Rehabilitation Act disparate treatment claim. *See Luckiewicz v. Potter*, 670 F. Supp. 2d 400, 407 (E.D. Pa. 2009).

### 2.  Count III - Rehabilitation Act Retaliation

Plaintiff alleges that he engaged in a Rehabilitation Act protected activity by requesting reasonable accommodations. He also alleges that his employer took an adverse action by reassigning him shortly after this request. This short interval suggests a causal connection between the protected activity and the adverse action. Plaintiff has thus not failed to state a Rehabilitation Act retaliation claim. *See Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

### 3.  Count IV - Rehabilitation Act Interference

Plaintiff alleges that Defendant violated Section 503 of the ADA, which is incorporated by Section 501 of the Rehabilitation Act. 29 U.S.C. §791(f). Section 503 of the ADA provides that:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act.

42 U.S.C. §12203(b).

The court concludes that Plaintiff has alleged that Defendant interfered with his ADA right to reasonable accommodations by denying his request for accommodations.

### D. Count V - Title VII Disparate Treatment

A prima facie Title VII disparate treatment claim requires that a plaintiff "show that (1) []he is a member of a protected class; (2) []he was qualified for the position []he sought to retain; (3) []he suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Smith v. RB Distribution, Inc.*, 498 F. Supp. 3d 645, 654 (E.D. Pa. 2020) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).

### 1. Adverse employment action

Defendant contends that Plaintiff has not alleged that he suffered an adverse employment action. (Doc. 16 at 15). An "adverse employment action" in the Title VII context is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015).

Plaintiff alleges that because of the investigation he was indefinitely reassigned to a position in the administrative building. (Id. ¶79). He alleges that due to this reassignment, he "lost significant income in the form of differential pay, holiday pay, overtime, and other additional income staff would otherwise be entitled to earn on their normal duty assignment." (Id.

¶163). Additionally, with regard to his request for an accommodation, Plaintiff alleges that he was not permitted to return to work with temporary physical restrictions as ordered by his physician. This denial of Plaintiff's request altered the conditions of his employment. He has thus alleged that he suffered an adverse employment action.

### 2. Inference of intentional discrimination

Defendant also contends that Plaintiff has not plead facts sufficient to show a discriminatory intent. (Doc. 16 at 16). Plaintiff alleges that the basis for placing him under investigation and reassigning him was his interactions with Spanish-speaking or Hispanic, Latino, or Puerto Rican inmates, which interactions were "being evaluated or scrutinized differently because of Plaintiff's race/color and national origin." (Doc. 1 ¶99). He also alleges that supervisors "have made taunting comments about Plaintiff's accent and the way Plaintiff pronounces certain words in English," and "about Plaintiff's Puerto Rican heritage." (Doc. 1 ¶¶101–02).

Although in some circumstances, "[d]eragatory or negative remarks" can give rise to an inference of intentional discrimination, *May v. PNC Bank*, 434 F. Supp. 3d 284, 296 (E.D. Pa. 2020) (citing *Rossi v. Wyoming Valley Health Care Sys.*, 2010 WL 2766343, at *4 (M.D. Pa. 2010)), "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision

process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 359 (3d Cir. 1999). Plaintiff alleges that it was "Management" who made the decisions not to allow him to return to work with temporary physical limitations, (Doc. 1 ¶¶59, 64) and Defendant Finley's decision to have him removed from his Recreation Specialist position. (Id. ¶87). Plaintiff does not allege that the derogatory comments toward him were made by the decisionmakers who allegedly caused him to suffer adverse employment actions. These comments are insufficient to support an inference of intentional discrimination.

Such an inference can also be supported by "showing that similarly situated individuals who were not members of the protected class were more favorably treated than the plaintiff." *Mitchell v. City of Pittsburgh*, 995 F. Supp. 2d 420, 430 (W.D. Pa. 2014). Plaintiff does allege that in 2019, Recreation Specialist Adam Ducayne (who, in construing the complaint's factual allegations in the light most favorable to Plaintiff, the court assumes is not a member of the same protected class), was permitted to work in a "light duty" position for several weeks after breaking his foot. (Doc. 1 ¶¶52–54). Although Plaintiff has not alleged that Ducayne worked for the same supervisor, he alleged that the decision to allow Ducayne to work in a "light

- 12 -

duty" position was made by "Management." Because they held the same position, were subject to decisions by the same "Management," and suffered similarly severe injuries, Ducayne and Plaintiff were similarly situated for purposes of the Complaint's allegation of disparate treatment.

The more favorable treatment of Ducayne is sufficient for an inference of intentional discrimination, but only with respect to Management's refusal to permit Plaintiff to work with temporary physical restrictions. Because Plaintiff has not alleged circumstances that could give rise to an inference of intentional discrimination in connection with his reassignment, he has failed to state a claim of disparate treatment with respect to that reassignment. Thus, Defendant's motion will be granted to the extent that Plaintiff claims disparate treatment with respect to his reassignment, but denied to the extent that Plaintiff claims disparate treatment with respect to Management's refusal to permit him to work with temporary restrictions.

### E. Count VI – Title VII Retaliation

A Title VII retaliation plaintiff must plead "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists

between her protected conduct and the employer's adverse action." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

Defendant asserts that Plaintiff has not alleged a causal link between protected conduct and an adverse action. (Doc. 16 at 18). Title VII prohibits discrimination against an employee for the reason that "he opposed … an unlawful employment practice … or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. §2000e-3(a). Thus, "the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings ('the participation clause') and those who oppose discrimination made unlawful by Title VII ('the opposition clause')." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006).

First, Plaintiff's allegation that "Management had knowledge of Plaintiff's prior EEO activity," specifically, a 2018–2019 EEO complaint against the United States Attorney's Office in Newark, New Jersey, (Doc. 1 ¶¶32, 34), is insufficient to raise a reasonable expectation that discovery will reveal evidence of a causal link between that activity and subsequent adverse employment actions. Plaintiff's complaints against a different agency, in a different state, are too far removed from the present allegations for the court to consider a causal link plausible. In addition, although Plaintiff

alleges that during his FCI Schuylkill employment he participated in an EEO informal counseling interview, (Doc. 1 ¶108), that interview came after Management's refusal to permit him to work with temporary physical restrictions and his reassignment.

But Plaintiff also alleges he received a negative performance entry, which was ordered by Defendant Finley, after he submitted complaints about Finley. (Id. ¶¶119–22) The court concludes that these allegations are sufficient to suggest a causal link between protected activity and adverse action. *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) ("The [Title VII] antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm …. a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." (internal quotations omitted)).

Therefore, Defendant's motion to dismiss Count VI will be denied.

### F. Count VII – Retaliatory Hostile Work Environment (Title VII & Rehabilitation Act)

Defendant argues that Plaintiff's retaliatory hostile work environment claim should be dismissed (1) because he failed to exhaust his administrative

remedies for this claim, (Doc. 16 at 12), and (2) because he did not sufficiently plead severe or pervasive conduct. (Id. at 19).

### 1. Exhaustion of Administrative Remedies

Before bringing suit for retaliation under Title VII or the Rehabilitation Act, a plaintiff must exhaust Title VII administrative remedies. *Robinson v. Dalton*, 107 F.3d 1018, 1020–21 (3d Cir. 1997); *Spence v. Straw*, 54 F.3d 196, 201 (3d Cir. 1995). In general, "exhaustion requires both consultation with a counselor and filing a formal EEOC complaint within the required times." *Robinson*, 107 F.3d at 1021. Once the EEOC has dismissed the charge, or 180 days have passed since its filing, a civil action may be filed. 42 U.S.C. §2000e-5(f)(1); 29 C.F.R. §1614.107.

Where, like here, a plaintiff brings several claims, disagreement may arise as to which ones have actually been exhausted. "The 'relevant test' for determining whether a later claim needs to be exhausted despite the filing of a previous charge is a two-pronged inquiry into whether 'the acts alleged in the subsequent suit are fairly within the scope of [1] the prior EEOC complaint, or [2] the investigation arising therefrom." *Simko v. United States Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)). With regard to the second prong, the court "must only look at the scope of the EEOC investigation that would reasonably

grow out of, or arise from, the initial charge filed with the EEOC, 'irrespectve of the actual content of the Commission's investigation.'" *Id.* at 209. In "determining whether a claim fairly or reasonably falls within the investigation arising from a charge, courts consider (1) whether the claim arises from the same set of facts that support the original charge and (2) whether the claim advances the same theory of discrimination as the original charge." *Id.*

Defendant asserts that Plaintiff did not raise a hostile work environment claim in his EEOC complaint. (Doc. 16 at 12). Defendant has attached the Report of Investigation concerning Plaintiff's EEOC complaint. (Doc. 16-1).[3] In that complaint, Plaintiff alleged that from January 28, 2020 through February 7, 2020, he was (1) denied a reasonable accommodation by management's refusal to permit him to work with restrictions, (2) subjected to disparate treatment by that refusal, (3) and subjected to discrimination when he was reassigned to a different job and placed under investigation for misconduct. (Id. at 2). He also alleges that on March 18, 2020, he was subjected to retaliation after participating in an EEO counseling interview when he was warned about watching too much TV during work. (Id. at 3).

---

[3] The Report details Plaintiff's allegations, but the memorandum describing them submitted by Plaintiff with his EEOC complaint has not been provided.

In sum, he alleged that he faced retaliation at work for engaging in protected activities. Although he does not specifically allege a "hostile work environment," his claim that he was subjected to a retaliatory hostile work environment advances a closely related theory of discrimination. Given that he alleged a pattern of discrimination and retaliation by his supervisors, it is reasonable to expect that investigation of further instances of a hostile work environment would grow out of his charge. By these allegations, Plaintiff's supervisors can fairly be said to have been "put on notice" of a retaliatory hostile work environment claim. *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996).

Defendant further contends that some of the instances of retaliation alleged by Plaintiff occurred after the investigation of his EEOC complaint concluded. (Doc. 16 at 12). But the exhaustion inquiry does not depend on what investigation actually took place. *See Simko*, 992 F.3d at 207. Because Plaintiff's retaliatory hostile work environment claims are within the scope of the investigation that would have reasonably grown out of his EEOC complaint, the court concludes that they have been administratively exhausted.

### 2. Failure to state a claim

A retaliatory hostile work environment claim requires a plaintiff to prove that "(1) [he] he suffered intentional discrimination because of [his] protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [him]; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present." *Komis v. Sec. of U.S. Dep't Lab.*, 918 F.3d 289, 293 (3d Cir. 2019). Defendant argues that Plaintiff "cannot show [that] management's actions were tied to any of his prior alleged protected activity" and has not alleged severe or pervasive discrimination. (Doc. 16 at 20).

As to Plaintiff's Title VII claim: He alleges that after Defendant Finley received a copy of the report of investigation, he "berated" Plaintiff for not wearing a mask. (Doc. 1 ¶119–20). He also alleges that after he complained about this incident, he received a negative performance entry ordered by Defendant Finley, (Id. ¶121–22), and that Defendant Finley "went out of his way to come to Plaintiff's office to check on Plaintiff every single day." (Id. ¶124). The court concludes that Plaintiff has alleged pervasive discrimination by prison management which would have detrimentally affected a reasonable person in like circumstances.

As to Plaintiff's Rehabilitation Act claim: a request for an accommodation for a disability is a protected activity under the Rehabilitation Act. *See Minter v. Dist. of Columbia*, 809 F.3d 66, 70 (D.C. Cir. 2015); *Coons v. Sec. of U.S. Dep't Treasury*, 383 F.3d 879, 887 (9th Cir. 2004). Plaintiff alleges that, following his knee injury, he asked to return to work with temporary physical restrictions. (Doc. 1 ¶47). His request was denied, and shortly thereafter, he was reassigned to an administrative position. (Id. ¶76). He alleges that this reassignment, which lasted more than two years, resulted in lost income. (Id. ¶163). The court concludes that Plaintiff has alleged protected activity and sufficiently severe or pervasive discrimination, and that the close temporal proximity between these two provides a plausible causal link.

For these reasons, Defendant's motion to dismiss Count VII will be denied.

### G. Count VIII and IX - Fourth Amendment - Seizure / Investigatory Detention / Search

Plaintiff's next two counts are against Defendant Finley. Defendant argues that these should be dismissed for insufficient service of process, (Doc. 16 at 6), and failure to state a claim. (Doc. 16 at 6–12).

### 1.  Service of Process on Defendant Finley

A defendant must be served within 90 days after the complaint is filed. Fed. R. Civ. P. 4(m). Service may be effected by "(A) delivering a copy of the summons and of the complaint to the individual personally; [or] (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2). "[T]he party asserting the validity of service bears the burden of proof on that issue." *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993).

Defendant asserts that "Warden Finley reported he has not received service of the Complaint in this matter." (Doc. 16 at 6). An affidavit filed by Plaintiff, sworn by process server Frank Smith, avers that the summons and the complaint was left with an adult at Defendant Finley's address. (Doc. 5; Doc. 22-2 at 5:20–22). The court concludes that Plaintiff has satisfied his burden of proof regarding effective service of process. *See J & J Sports Prods., Inc. v. Graham*, 2014 WL 1340622, at *3 (E.D. Pa. 2014) ("[C]ourts in this district have concluded that return of service by a private process server creates a rebuttable presumption that proper service was effectuated.").

## 2.  Failure to state a claim

The Fourth Amendment guards "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Plaintiff claims that Defendant Finley violated the Fourth Amendment by subjecting him to a warrantless (Count VIII) seizure (by "reassing[ing] Plaintiff to a different position and restrict[ing] his access to the secure perimeter of FCI Schuylkill solely because of his status as the uncharged target of a criminal investigation"), and (Count IX) search (by ordering that he be physically searched at the security entrance to the prison.) (Doc. 1 ¶¶71, 242, 251). He brings these Fourth Amendment claims through *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), which allowed a claim for damages against federal officers for violating the Fourth Amendment.

Recently, the Supreme Court has "emphasized that recognizing a cause of action under *Bivens* is a 'disfavored judicial activity.'" *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (quoting *Ziglar v. Abassi*, 582 U.S. 120, 135 (2017)). It has "framed the inquiry as proceeding in two steps." *Id.* at 492. "First," the court asks "whether the case presents 'a new *Bivens* context'— *i.e.*, is it 'meaningfully' different from the three cases in which the Court has implied a damages action." *Id.* (quoting *Ziglar*, 582 U.S. at 139). "Second, if

a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar*, 582 U.S. at 136). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)).

The court agrees with Defendant both that this case presents a new Bivens context and that special factors weigh against recognizing a *Bivens* remedy here.

First, unlike *Bivens*, in which federal agents entered the plaintiff's residence, arrested him, "manacled" him "in front of his wife and children, and threatened to arrest the entire family," 403 U.S. at 189, the alleged search and seizure here occurred at Plaintiff's place of employment, in the form of a security search and reassignment to a position in another building. That is a new context. The *Bivens* search and seizure occurred within the home, which, "when it comes to the Fourth Amendment, … is first among equals." *Florida v. Jardines*, 569 U.S. 1, 6 (2013). And the agents there

allegedly used excessive force. The court concludes that these facts meaningfully distinguish this case from *Bivens*.[4]

The fact that Plaintiff's claims are based on the Fourth Amendment is not enough to bring them within the scope of *Bivens*, for "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 140 S.Ct. 735, 743 (2020). Indeed, courts have found new *Bivens* contexts where a Fourth Amendment violation has been alleged. *See Egbert*, 596 U.S. at 493 ("The Court of Appeals conceded that Boule's Fourth Amendment claim presented a new context for *Bivens* purposes."); *Xi v. Haugen*, 68 F.4th 824, 834 (3d Cir. 2023) ("[T]he differences between *Bivens* and this case make clear that Xi's Fourth Amendment claims arise in a context the Supreme Court has not previously countenanced."); *Weir v. FBI*, 2023 WL 7018415, at *6 (W.D. Pa. 2023); *Karkalas v. Marks*, 2019 WL 3492232, at *9 (E.D. Pa. 2019).

For the second step, the court considers Count VIII and IX separately.

---

[4] The other two contexts in which the Court has fashioned a private cause of action under the Constitution involved alleged violations of the Fifth, *Davis v. Passman*, 442 U.S. 228 (1979), and Eighth, *Carlson v. Green*, 446 U.S. 14 (1980), amendments. *Egbert*, 596 U.S. at 490–91. Because this case implicates the Fourth Amendment, *Bivens* is the only relevant comparator.

Count VIII alleges that Defendant Finley's "actions to reassign Plaintiff to a different position and restrict his access to the secure perimeter of FCI Schuylkill solely because of his status as the uncharged target of a criminal investigation, amounted to a seizure subject to the requirements of the Fourth Amendment." (Doc. 1 ¶242). Special factors indicate that Congress is better equipped to weigh the costs and benefits of allowing a damages action in a context like this one. For one thing, the alleged violations occurred in the context of a supervisor-employee relationship. Congress has enacted extensive legislation, like the Rehabilitation Act and Title VII of the Civil Rights Act, protecting employees from wrongful treatment by their employers.  And although Defendant Finley is a law enforcement officer, in reassigning Defendant to a different position and restricting his access to other areas of the facility, he would have been acting as his supervisor. Congress' activity in the area of workplace conduct suggests that it is better equipped to assess the wisdom of allowing a damages action for conduct alleged in this context.

Next, in Count IX, Plaintiff alleges that Defendant Finley's actions to order a warrantless search of his person violated his rights under the Fourth Amendment. (Doc. 1 ¶255). According to the Complaint, on February 7, 2020, after Plaintiff arrived at work and went through security, he was told to

go into a private search area, where he was subjected to "an invasive physical search of his person and all of his belongings." (Id. ¶¶71–72). "This was," he alleges, "the first time Plaintiff had ever been searched coming into work in almost 10 years working in the Federal Bureau of Prisons." (Id. ¶73).

Like most federal buildings, FCI Schuylkill has a security screening area. At such areas, like at airports, entrants routinely submit to searches of their persons and belongings. And screening at federal prisons, where violence and attempts to smuggle contraband are all too common, serves an especially important safety purpose. These considerations provide reason to hesitate before recognizing a *Bivens* action in such a context. Given the ubiquity of security screening and the important interest in safety it implicates, it is at least arguable that Congress is better equipped to weigh the costs and benefits of permitting private damages suits for alleged searches in this context.

For these reasons, the court concludes that Plaintiff's Fourth Amendment claims present a new *Bivens* context and that special factors weigh against recognizing a remedy for them under *Bivens*. Therefore, Defendant's motion to dismiss Counts VIII and IX will be granted.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be denied as to Counts I through IV, Count VI, and Count VII. As to Count V, the motion to dismiss will be granted to the extent that Plaintiff claims disparate treatment with respect to his reassignment, but denied to the extent that Plaintiff claims disparate treatment with respect to Management's refusal to permit him to work with temporary restrictions. Finally, the motion to dismiss will be granted as to Counts VIII and IX. An appropriate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: January 5, 2024**
22-1366-01