UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

RAUL NAZARIO,

Plaintiff,

v.

PAMELA BONDI, ATTORNEY
GENERAL, et al.,

Defendant.

CIVIL ACTION NO. 3:22-CV-01366

(SAPORITO, J.)

## MEMORANDUM

On September 2, 2022, the plaintiff, Raul Nazario, initiated this action concerning nine claims against former Attorney General of the United States, Merrick Garland, and Warden Scott Finley of the Federal Correctional Institution in Schuylkill for violations of the Rehabilitation Act, Title VII of the Civil Rights Act of 1964, and the United States Constitution. (Doc. 1). On January 5, 2024, the Court dismissed Warden Finley from this action and further dismissed two of the plaintiff's claims: Counts VIII and IX.[1] (Doc. 24; Doc. 25). Now before the Court is a motion

---

[1] The Court also dismissed the plaintiff's disparate treatment claims in Count V under Title VII of the Civil Rights Act of 1964 as it related to the plaintiff's alleged reassignment. It did not, however, dismiss the plaintiff's disparate treatment claims in Count V as pertinent to the plaintiff's alleged denial of his request for accommodations.

for summary judgment under Rule 56 of the Federal Rules of Civil Procedure filed by the Attorney General of the United States, Pamela Bondi, concerning the plaintiff's remaining seven claims.[2] (Doc. 36). The motion has been briefed (Doc. 43; Doc. 44; Doc. 50; Doc. 51) and it ripe for review.

## I.    Background[3]

In June 2019, the Federal Correctional Institution in Schuylkill, Pennsylvania (FCI Schuylkill) hired the plaintiff as a recreational specialist. The plaintiff's duties included organizing and overseeing all recreational programs and classes at FCI Schuylkill, and he was directly supervised by Christopher Cuff and Jennifer Reigel. This action concerns numerous aspects of the plaintiff's employment at FCI Schuylkill.

On January 26, 2020, the plaintiff awoke with severe knee pain and had difficulty moving his leg. Although he attempted to work, he was unable to perform his duties due to his limited mobility and ongoing pain. He promptly notified Supervisor Cuff of his condition, and Supervisor

---

[2] Attorney General Pamela Bondi has substituted in this action for former Attorney General, Merrick Garland.

[3] The following facts are admitted by the plaintiff in response to the defendant's statement of material facts in Doc. 43. *See* (Doc. 50-5).

Cuff approved his request to leave for the remainder of the day to seek medical attention. The plaintiff went to the hospital where he underwent an X-ray of his knee; however, a review of the records indicates that no medical provider identified any abnormalities.

On January 28, 2020, the plaintiff provided Supervisor Cuff with a medical record from his physician, Thomas Martin M.D., which listed a diagnosis of primary localized osteoarthritis of the right knee. Dr. Martin informed Supervisor Cuff that the plaintiff was only able to work under modified, light-duty restrictions, including limitations on kneeling, squatting, and running. In response, Supervisor Cuff advised the plaintiff that he could not return to work until all restrictions were lifted and that he would be required to use his sick leave if he did not return to work. The plaintiff subsequently submitted an updated medical record lifting most of his prior restrictions. The only remaining limitation was a prohibition on running while at work.

On February 4, 2020, the plaintiff texted Supervisor Cuff that he had notified Human Resources of his intent to return to work that Friday. He explained that Human Resources had informed him that he would need to address that matter directly with his supervisor rather than

through the department. Supervisor Cuff then told the plaintiff that the decision regarding whether the plaintiff could return to work on a regular or light-duty schedule rested with Warden Finley, rather than himself, so the plaintiff should provide his updated medical documentation to Warden Finley for approval. The plaintiff promptly forwarded the updated medical record to Supervisor Cuff, Warden Finley, and Human Resources.

On February 7, 2020, the plaintiff reported back to work but was searched prior to entering his workplace. During the search, Supervisor Cuff presented the plaintiff with a memorandum signed by Warden Finley and dated February 6, 2020, informing him that he would be placed on administrative leave for the following two days. Supervisor Cuff also provided a second memorandum stating that the plaintiff would be reassigned to the computer laboratory at the FCI Administration building beginning on February 10, 2020. The plaintiff alleges that he was given no explanation for the reassignment at that time. Two days later, however, Warden Finley informed him that the reassignment was due to an ongoing investigation involving the plaintiff bringing in contraband into the institution.

- 4 -

While assigned to the computer laboratory, the plaintiff alleges that he experienced issues related to his race and national origin. He contends that unnamed staff members repeatedly mocked his Spanish accent and questioned his English proficiency. He further alleges that these individuals made derogatory remarks suggesting that he drove a Mercedes like "a drug dealer." In addition, the plaintiff avers that he faced scrutiny regarding his job performance. On March 18, 2020, Supervisor Cuff approached him in his office and stated that staff had raised concerns about him watching excessive television while at work. The plaintiff alleges that this encounter occurred approximately thirty minutes after he participated in an informal counseling session with an EEO counselor, of which his supervisor and other officials were aware. Moreover, on December 4, 2020, and during the height of the COVID pandemic, the plaintiff describes an incident in which Warden Finley closely monitored him all day and reprimanded him continuously for not wearing a mask. The plaintiff brings his claims based on these events.

## II.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure dictates summary judgment should only be granted if "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

Parties seeking summary judgment bear "the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52. A court must first determine if the moving party has made *prima facie* showing that it is entitled to summary judgment when evaluating

such a motion. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a form which is inadmissible at trial, the content of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## III.    Discussion

The plaintiff's remaining claims against defendant Bondi fall into two categories: (1) violations of the Rehabilitation Act and (2) violations of Title VII of the Civil Rights Act of 1964. The plaintiff's claims concerning violations of the Rehabilitation Act are based on the plaintiff's alleged knee injury, and those violations concerning Title VII are based on the plaintiff's race and national origin.

### A. The Rehabilitation Act, as amended, 29 U.S.C. § 701, *et seq.*

The plaintiff has brought five claims in violation of the Rehabilitation Act: (1) failure to provide reasonable accommodations; (2) disparate treatment; (3) retaliation; (4) interference; and (5) retaliatory hostile work environment.

Section 501(f) of the Rehabilitation Act, 29 U.S.C. § 791(f), requires a federal employer to comply with the standards set forth in Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, and Sections 501 and 510 of the ADA, 42 U.S.C. §§ 12201-12204, 12210. First, Section 102(a) of the ADA prohibits an employer from discriminating against "a qualified individual on the basis of disability," 42 U.S.C. § 12112(a), a prohibition that includes failing to reasonably accommodate

such individuals. *See Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 191 (3d Cir. 2009). Second, Section 503(a) of the ADA prohibits retaliatory discrimination, providing that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Third, the Third Circuit has also held that it is unlawful to retaliate against an employee for making a good faith request for an accommodation, even if the employee is not actually "disabled" under the ADA. *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003). Appropriately, precedent interpreting the ADA is equally relevant to interpreting the Rehabilitation Act. *See, e.g., Fowler v. UPMC Shadyside*, 578 F.3d 203, 208 (3d Cir. 2009) (characterizing the ADA and Rehabilitation Act standards as "coextensive").

### 1.  Failure to Provide Reasonable Accommodations

The plaintiff argues that the defendant violated the Rehabilitation Act by failing to provide reasonable accommodations for his known knee impairment. (Doc. 1, ¶ 183). To prevail on a failure to accommodate claim,

a plaintiff must establish that (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319–320 (3d Cir. 1999). The defendant moves for summary judgment, arguing that the plaintiff has failed to establish that he is disabled and, alternatively, that the record demonstrates that the defendant made a good-faith effort to accommodate him.

We turn to the defendant's contention concerning the plaintiff's disability. Under the Rehabilitation Act, "an individual has a disability if she (1) has 'a physical or mental impairment that substantially limits one or more major life activities of such individual'; (2) has 'a record of such an impairment'; or (3) is 'regarded as having such an impairment.'" *Koci v. Cent. City Optical Co.*, 69 F. Supp. 3d 483, 486–87 (E.D. Pa. 2014) (quoting 42 U.S.C. § 12102(1)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12101(2)(A). The defendant contends that the

plaintiff has failed to establish a disability because he has not demonstrated that his alleged osteoarthritis substantially limits a major life activity. We conclude, however, that the plaintiff has produced sufficient evidence in the record to satisfy this burden.

The defendant admits that a doctor diagnosed the plaintiff with "primary localized osteoarthritis" in his right knee. (Doc. 43, ¶ 13). That same physician recommended that the plaintiff take off one week from work due to that injury and further advised that, upon his return, he work a modified schedule limiting his running, squatting, and kneeling. See (id.) ("[N]o running, no restraints, squatting, kneeling regular duties on 02/22/2022"). We find it reasonable to conclude that restrictions on running, squatting, or kneeling amount to limitations on a major life activity.[4] Moreover, the defendant acknowledges that, later in the plaintiff's employment, he was unable to work overtime due to his knee

---

[4] The defendant argues that the Court should take notice that the physician eventually removed the entirety of the plaintiff's restrictions within a matter of days after the plaintiff's original note to his employer. (Doc. 44, at 16). While we acknowledge the defendant's argument, we cannot overlook the original note which imposed those restrictions in the first place. Indeed, the plaintiff argues that the restrictions were lifted not because they were unnecessary, but because the defendant would not permit him to return to work while they remained in place. (Doc. 50-1, at 8).

condition. (Doc. 43, ¶ 37). However, we do not view the plaintiff's knee injury in isolation. The plaintiff testified that he originally hurt his knee in high school in 1998 and reinjured that knee in 2013. (*Id.*, ¶ 50). The plaintiff further stated that he reinjured that same knee in 2016 or 2017. (*Id.*, ¶ 52). We find that the record not only supports the plaintiff's assertion that his knee injury limited his major life activities in 2020, but also permits a reasonable factfinder to conclude that he has experienced ongoing issues with that injury since hurting it in 1998. Therefore, viewing the evidence in a light most favorable to the non-moving plaintiff, we find that there remains a genuine dispute of material fact as to the plaintiff's disability that precludes summary judgment.

The defendant also moves for summary judgment concerning the third element of the plaintiff's failure-to-accommodate claim, arguing that he has failed to show that the defendant did not make a good faith effort to assist him concerning his knee injury. The defendant contends that "[a]lthough [the plaintiff] had to report to the computer lab because he was under investigation, when he reported back to work from the alleged knee injury, he had light duty work, the work he requested." (Doc. 44, at 27). Moreover, the defendant argues that Supervisor Cuff engaged

in the interactive process with the plaintiff to obtain clarification regarding his injuries. (*Id.*). The plaintiff contends that the defendant failed to accommodate him or engage in the interactive process by prohibiting his return to work unless he could do so without any restrictions. (Doc. 50-1, at 9). Therefore, the plaintiff was compelled to forgo his work restrictions upon returning, despite his physician's recommendation to limit running, squatting, and kneeling. (Doc. 43, ¶ 13). The parties' differences of opinion concerning the events in question create a genuine dispute of material fact as to whether the defendant made a good faith effort to assist the plaintiff with his disability. This determination, however, is best left to the jury. The defendant's motion for summary judgment as to this claim will be denied.

### 2. Disparate Treatment

Disparate treatment claims under the Rehabilitation Act are governed by the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007). Under the *McDonnell Douglas* paradigm,

> [P]laintiff has the initial burden to make a prima facie showing of discrimination, but if s/he does so, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment action. If

the defendant meets this burden, the presumption of discriminatory action raised by the prima facie case is rebutted. However, the plaintiff must then be afforded an opportunity to show that the employer's stated reason for the employment action … was pretextual. In order to prove the employer's explanation is pretextual, the plaintiff must cast sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication or allow the factfinder to infer that discrimination was more likely than not [the sole] cause of the adverse employment action.

*Id.* (citations, internal quotation marks, brackets, and ellipses omitted).[5]

Concerning the first step of *McDonnell Douglas*, to establish a prima facie case of discrimination under the Rehabilitation Act, an employee must show: (1) that he or she has a disability; (2) that he or she

---

[5] We note that *Wishkin* articulated a standard, borrowed from the Title VII and ADA context, permitting pretext to be proven by adducing sufficient evidence for a factfinder to infer that discrimination was more likely than not a *motivating or determinative* cause of the adverse employment action. *Wishkin*, 476 F.3d at 185. But in light of the statutory text of the Rehabilitation Act, a plaintiff asserting a claim under this Act must demonstrate that discrimination on the basis of disability was the *sole* cause of an adverse employment action, not merely a motivating or determinative cause, as the existence of any alternative cause would be fatal to the claim under this statute. *See Lamberson v. Pennsylvania*, 561 F. App'x 201, 207 (3d Cir. 2014); *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 236 n.11 (3d Cir. 2013); *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 400 n.4 (3d Cir. 2007); *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 125 (3d Cir. 1998); *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157–58 (3d Cir. 1995).

is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job. *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996). That employee must also demonstrate a *prima facie* showing that reasonable accommodations were possible. *Id.* Here, the plaintiff alleges that the defendant denied him a temporary light duty position as an accommodation for the plaintiff's disability, while allowing a similarly-situated Caucasian employee to have that accommodation. The defendant has moved for summary judgment, contending that the plaintiff's claim fails because he does not qualify as disabled under the Rehabilitation Act. But we have already found above that a reasonable factfinder could conclude that the plaintiff's knee injury constitutes a disability under the Rehabilitation Act, and at the very least, provides a genuine dispute of material fact as to the plaintiff's disability that precludes summary judgment. Therefore, the defendant's motion for summary judgment as to this claim will also be denied.

### 3. Retaliation

To make out a prima facie case of retaliation under the

Rehabilitation Act, a plaintiff must show that (1) he engaged in protected activity; (2) he suffered a materially adverse action; and (3) there is a causal connection between the adverse action and the protected activity. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500–01 (3d Cir. 1997). Here, the plaintiff points to his accommodation requests for his disability and his initiation and pursuance of an EEO complaint as protected activities, arguing that the defendant retaliated against him by reassigning him and placing him under investigation.[6] The defendant does not contest the first two elements and moves for summary judgment on the third, arguing that the plaintiff cannot establish a causal link between his protected activities and his reassignment and investigation, because the defendant was unaware of those activities when taking the adverse actions.

The plaintiff does not directly address the contention that the defendant was unaware of his activities but rather appears to suggest that the timing between his request for accommodations and initiation of

---

[6] The plaintiff also details that he was subjected to "yelling, screaming, [and] heightened scrutiny" (Doc. 50-1, at 14) because of his actions. The plaintiff, however, does not seem to base his retaliation claim on these indirect measures and does not attempt to argue that they constitute "adverse actions."

an EEO complaint and his reassignment and placement under investigation is sufficient to rise to an inference of a causal connection between the activities and the adverse actions.[7] "[T]emporal proximity between the protected activity and the [adverse action can be itself] sufficient to establish a causal link." *Shellenberger*, 318 F.3d at 189 (internal citation and quotation omitted). However, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." *Id.* at 189 n.9 (internal citation and quotation omitted).

We first analyze the temporal proximity of the initiation of the EEO complaint in consideration with the plaintiff's reassignment and investigation. The Third Circuit has held that "[a]lthough there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the

---

[7] In the plaintiff's brief in opposition to the defendant's motion for summary judgment, the plaintiff simply argues "[i]n this case, like *Bernhard* [*v. Brown & Brown of Lehigh Valley, Inc.*, 720 F. Supp. 2d 694 (E.D. Pa. 2010)], Defendant took action against Plaintiff by reassigning him and placing him under investigation for reasons that strain credulity given the timing of Plaintiff's reassignment and the lack of evidence as to why he was placed under investigation." (Doc. 50-1, at 14). The plaintiff does not elaborate further.

adverse action, without more, cannot create an inference of causation and defeat summary judgment." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)); *see also Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007) (finding that a five-month time period between an employee's complaint and the adverse action was, without additional evidence, insufficient to raise an inference of causation). Here, the plaintiff admits that he made his EEO complaint in 2018, but that he was notified of his reassignment on February 7, 2020, with his reassignment occurring on February 10, 2020. (Doc. 43, ¶ 35). Moreover, he concedes that he was notified on February 12, 2020, that he was under investigation for misconduct. (*Id.*, ¶ 38). Therefore, at a minimum, a gap of at least a year existed between the protected activity and the adverse actions. This temporal proximity, without more, cannot create an inference of causation, and the plaintiff has failed to identify any other acts of discrimination within this period to suggest a causal connection between the initiation of the EEO complaint and her reassignment and investigation. Thus, the plaintiff's retaliation claim fails to the extent that the plaintiff relies on the initiation of the EEO complaint as her

protected activity.

The plaintiff's request for accommodations for his disability, however, first occurred on January 28, 2020, when the plaintiff texted his supervisor his medical record with the necessary modifications to his work duties. (Doc. 43, ¶¶ 11-15). Therefore, the temporal proximity between his request for accommodations and his subsequent reassignment was only approximately ten days. The Third Circuit has held that this temporal proximity alone is sufficient to create a causal link between an engagement in a protected activity and an adverse action. *See Shellenberger*, 318 F.3d at 189 (finding that ten days between an alleged protected activity and a subsequent adverse action was sufficient to establish a causal connection between the two actions). But we must also acknowledge that courts have held that "a temporal proximity greater than ten days requires supplementary evidence of a retaliatory motive." *Gairloch v. Pennsylvania State Univ.*, 84 F. Supp. 3d 407, 417 (M.D. Pa. 2015) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)). Therefore, we note that even if the temporal proximity here was greater than ten days, the plaintiff has provided sufficient supplementary evidence of a retaliatory motive to establish a

causal connection. In addition to the temporal proximity of the defendant's actions, the record indicates that the plaintiff's requests for accommodations were not isolated, but rather occurred repeatedly over several days with the plaintiff continuously modifying his request in order to return to work. (Doc. 43, ¶¶ 14–33). The plaintiff asserts that he was compelled to remove his medical restrictions against his doctor's advice because the defendant would not allow him to work while adhering to those restrictions. We find the circumstances and the timing of the reassignment is sufficient to allow a reasonable factfinder to conclude that the defendant's adverse actions were unduly suggestive of a retaliatory motive against the plaintiff. Therefore, the plaintiff has demonstrated enough evidence to demonstrate a causal connection between his request for accommodations and his subsequent demotion and investigation.

Nonetheless, the defendant also argues that even if the plaintiff can satisfy a prima facie case of retaliation under step one of *McDonnell Douglas*, the Court should still grant its motion for summary judgment because the plaintiff cannot satisfy its burden under the third step of *McDonnell Douglas*, requiring the employee to show that the employer's

legitimate, nondiscriminatory reason was pretextual. The Third Circuit has recognized that a plaintiff may demonstrate pretext by pointing to evidence allowing a factfinder to disbelieve the employer's reason for the adverse employment action. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citing generally *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). The evidence must indicate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons. *Id.* at 644–45 (citing *Fuentes*, 32 F.3d at 765). In other words, a plaintiff must show that the employer's proffered reason was "so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997). Here we find that the plaintiff has produced such evidence.

The defendant contends that the plaintiff's reassignment was driven solely by the evolving investigation and the decision to keep him away from inmates was for safety reasons. (Doc. 44, at 30). But the record suggests that the actions underlying this claim began immediately after the plaintiff first requested accommodations, as he describes a series of

- 21 -

allegedly retaliatory measures consisting of: (1) his forced return to work without accommodations (Doc. 50-5, ¶¶ 15–19); (2) his reassignment (*Id.*); (3) an investigation (*Id.*, ¶ 38); (4) verbal harassment (*Id.*, ¶ 47); and (5) consistent monitoring (*Id.*). *See also generally* (Doc. 50-1). A reasonable factfinder could conclude that the plaintiff's request for accommodations, rather than the defendant's safety concerns, proved to be the catalyst that began the series of retaliatory measures, starting first with the reassignment. Therefore, the plaintiff's evidence, at a minimum, creates a genuine dispute of material fact as to pretext that is better left for the factfinder. The defendant's motion for summary judgment is therefore denied as to this claim.

### 4. The Remaining Claims: Unlawful Interference, Retaliatory Hostile Work Environment

The plaintiff brings two additional claims under the Rehabilitation Act: (1) unlawful interference and (2) retaliation hostile work environment.

The plaintiff's unlawful interference claim is predicated upon 42 U.S.C. § 12203(b), which provides that:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having

exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b). While the Third Circuit has not defined the elements required for a § 12203(b) claim in this context, some courts of appeals have adopted a test analogous to the one used to analyze interference claims under the Fair Housing Act. *See Kelly v. Graphic Packagin Int'l, LLC,* No. 24-1400, 2025 WL 573766, at *4 (6th Cir. Feb. 21, 2025); *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017); *Brown v. City of Tucson*, 336 F.3d 1181, 1191 (9th Cir. 2003). Other courts have acknowledged that a strict construction of the statutory language in § 12203(b) could be appropriate. *See Menoken v. Dhillon*, 975 F.3d 1, 10 (D.C. Cir. 2020). As the D.C. Court of Appeals noted, the primary substantive difference between the tests is that the former requires an employer's discriminatory intent while the latter focuses on how "a reasonable employee would have understood the employer's action." *Id.* In either case, however, a plaintiff must plead some sort of interference on behalf of the defendant that prevented him from exercising or enjoying the rights granted or protected by the Rehabilitation Act. Here, the defendant has moved for summary

judgment on the plaintiff's unlawful interference claim, arguing that there is no evidence that the defendant interfered with the plaintiff's rights under the Rehabilitation Act.

Regarding the plaintiff's retaliatory hostile work environment claim under the Rehabilitation Act, a plaintiff must establish that: "(1) [he] suffered intentional discrimination of [his] protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [him]; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present." *Komis v. Sec'y of the United States Dep't of Lab.*, 918 F.3d 289, 293 (3d Cir. 2019). The defendant has moved for summary judgment, arguing that the plaintiff has failed to show that the alleged discrimination was severe or pervasive, and that the alleged discrimination detrimentally affected him. (Doc. 44, at 31).

The plaintiff, however, has failed to offer any substantive response in his brief in opposition to the defendant's arguments concerning either of these claims. *See generally* (Doc. 50-1). Indeed, the plaintiff's brief in opposition only seemingly addresses the defendant's motion for summary judgment as it pertains to his failure to accommodate, disability

discrimination, and retaliation claims under the Rehabilitation Act. *See* (*Id.*, at 16) ("Defendant's Motion for Summary Judgment should fail as to the issue of failure to accommodate, disability discrimination and retaliation."). Based on the plaintiff's failure to address the substance of the defendant's arguments in favor of summary judgment on these claims, we find that the plaintiff has abandoned them. *See Cicchiello v. Beard*, 726 F. Supp. 2d 522, 531 (M.D. Pa. 2010); *see also Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *Carroll v. Lancaster Cnty.*, 301 F. Supp. 3d 486, 499–500 (E.D. Pa. 2018) (collecting cases); *Glover v. City of Wilmington*, 966 F. Supp. 2d 417, 428 (D. Del. 2013) ("Presumably, counsel's choice not to respond to the [defendant's] argument was a reasoned professional judgment. It was the essence of a waiver."). Therefore, summary judgment will be granted in favor of the defendant with respect to the plaintiff's unlawful interference claim and retaliatory hostile work environment claim.

### B. Title VII of the Civil Rights Act of 1964

The plaintiff also brings three claims in violation of Title VII: (1) disparate treatment; (2) retaliation; and (3) retaliatory hostile work environment.

Discrimination claims under Title VII are subject to the same burden-shifting *McDonnell Douglas* framework seen in the plaintiff's claims for violations of the Rehabilitation Act. The plaintiff bears the burden of making out a prima facie case of discrimination, which requires a showing that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an "adverse employment action"; and (4) the circumstances of the adverse action give rise to an inference of discrimination. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (per curiam). Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to offer a legitimate, nondiscriminatory rationale for its conduct. *Id.* If the employer meets this burden, the plaintiff must establish that the employer's proffered explanation is pretext for discrimination. *Id.* Here, the defendant contests the third and fourth elements of the plaintiff's discrimination claim, and further argues that the plaintiff has failed to show pretext as

- 26 -

necessary under the third step of *McDonnell Douglas*.

Retaliation claims under Title VII also follow the standard seen in *McDonnell Douglas*. *Lanza v. Postmaster Gen. of U.S.*, 570 F. App'x 236, 240 (3d Cir. 2014). A plaintiff must show that: (1) he engaged in protected activity; (2) the employer took a material adverse action against the plaintiff; and (3) there exists a causal connection between the adverse action and the protected activity. *LeBoon*, 503 F.3d at 231–32. The defendant has moved for summary judgment on the basis that the plaintiff has failed to show the third element in his prima facie case, and moreover, any pretext under the third step of *McDonnell Douglas*.

A retaliation hostile work environment claim under Title VII, like under the Rehabilitation Act, requires a plaintiff to establish that: (1) [he] suffered intentional discrimination because of [his] protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [him]; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present." *Komis*, 918 F.3d at 293 (citations omitted). To determine whether an environment is hostile, a court must consider the totality of the circumstances, including "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Here, the defendant moves for dismissal on this claim due to the plaintiff's failure to show that the alleged discrimination was pervasive or severe, and that the alleged discrimination detrimentally affected him.

The plaintiff, however, has failed to respond to any of the defendant's arguments for dismissal of these claims. Not only does the plaintiff fail to address the merits of the defendant's arguments, but he also fails to even acknowledge his Title VII claims in their entirety throughout his brief in opposition. Indeed, as we mentioned above, the plaintiff's brief in opposition only seemingly addresses the defendant's motion for summary judgment as it pertains to his claims under the Rehabilitation Act for failure to accommodate, disability discrimination, and retaliation. Therefore, we find that the plaintiff has abandoned these claims and summary judgment will be granted. *Skirpan v. Pinnacle Health Hospitals*, No. 1:07-CV-1703, 2010 WL 3632536, at *6 (M.D. Pa. Apr. 21, 2010) ("Where a plaintiff has brought a cause of action which is

challenged through motion for summary judgment as legally insufficient, it is incumbent upon to the plaintiff to affirmatively respond to the merits of a summary judgment motion. Indeed, a Plaintiff's failure to respond to these arguments constitutes an abandonment of these causes of action and essentially acts as a waiver of these issues.").

## IV.   Conclusion

For the foregoing reasons, the defendant's motion for summary judgment will be granted in part and denied in part. The defendant's motion for summary judgment will be denied as to the plaintiff's claims under the Rehabilitation Act: (1) failure to provide reasonable accommodations; (2) disparate treatment; and (3) retaliation concerning the plaintiff's request for reasonable accommodations. The motion for summary judgment will be granted as to the following claims under the Rehabilitation Act: (1) retaliation concerning the plaintiff's prior EEO complaint; (2) unlawful interference; and (3) retaliatory hostile work environment. Summary judgment will be granted as to all claims under Title VII: (1) disparate treatment; (2) retaliation; and (3) retaliatory hostile work environment.

An appropriate order follows.


Dated: March 11, 2026                    *s/Joseph F. Saporito, Jr.*
                                         JOSEPH F. SAPORITO, JR.
                                         United States District Judge